[Civil No. 4024. Filed April 17, 1939.]

[89 Pac. (2d) 622.]

JAMES POULOS, Appellant, v. SID W. ELLERY, Appellee.

Mr. Frank H. Swenson and Mr. Frederic A. Shaffer, for Appellant.

Mr. Rouland W. Hill, for Appellee.

LOCKWOOD, J.—Sid W. Ellery, hereinafter called plaintiff, brought suit against James Poulos, hereinafter called defendant, for an accounting of an alleged joint adventure of plaintiff and defendant in the purchase of 400 shares of the capital stock of the Shattuck Denn Mining Company. Defendant answered, denying that there ever was any joint adventure, and further alleging that all of the dealings of plaintiff in regard to the Shattuck Denn stock aforesaid had been terminated by mutual agreement in the year 1932, wherein plaintiff renounced any interest in any of the stock mentioned in the complaint. Defendant then counterclaimed for certain money which he alleged was due from plaintiff as a result of the transaction above referred to. The case came on for trial before the court sitting without a jury, and various evidence, oral and documentary, was presented, the case then being taken under advisement. Eventually the court made findings of fact, among which were the following:

"(1) That plaintiff and defendant, on March 15, 1931, entered into an agreement of joint adventure un-

der the terms of which they were to purchase four hundred (400) shares of the capital stock of the Shattuck Denn Mining Corporation for the purpose of holding said stock and participating equally in the profits or sharing equally in the losses from a subsequent sale thereof.

"(2) That in pursuance to said agreement and on said March 15, 1931, plaintiff and defendant purchased four hundred (400) shares of said stock and paid therefor the sum of two thousand two hundred twenty-five dollars ($2,225.00)."

"(8) That on January 21, 1937, defendant repudiated said agreement and gave notice thereof to plaintiff. Such notice was the first notice plaintiff had received from defendant of said repudiation."

"(10) That said agreement of March 15, 1931, had not been terminated and was in full force and effect up to the time defendant repudiated it on January 21, 1937."

The court also found that both parties made various payments on account of the joint adventure, and that the stock in question had been sold by defendant for the sum of $9,600, and that plaintiff's share thereof, after the deduction of certain credits due defendant, was $3,500.87, together with interest from January 30, 1937. Judgment was then rendered in favor of plaintiff in accordance with the findings for the amount above set forth, whereupon this appeal was taken.

There are ten assignments of error, grouped under several propositions of law, but we think they all amount to but one thing, and that is, that the evidence did not sustain the findings of the trial court, for if these findings are correct, we think there can be no doubt that the judgment followed as a matter of law therefrom.

██ We have examined the reporter's transcript and the documentary evidence carefully. Taking them in the strongest manner in support of the judgment,

as under our oft repeated rule we must consider them, they show the following facts:

██ In March of 1931, plaintiff was manager of the Miami branch of the Old Dominion Bank, in Miami, Arizona, while defendant was in business in Miami and a customer of said bank. He and plaintiff had for many. years been good friends and close business associates. At that time the two parties agreed to purchase together 400 shares of Shattuck Denn Mining Company stock, participating equally in the profits of such purchase, and in the losses if there were any. The parties did not have enough money to pay for the 400 shares in question, and plaintiff thought it unadvisable, for various reasons, that he should borrow from his own bank, so the purchase was made in the following manner: Plaintiff contributed $200.00, and defendant $400.00 in cash, and $525.00 was borrowed from plaintiff's bank by defendant, the latter giving as collateral security 200 shares of Shattuck Denn stock which were purchased with the $600.00 contributed by himself and plaintiff and the $525 borrowed from the bank, as aforesaid. At the same time plaintiff borrowed from the branch of the Valley Bank in Miami $1100.00, giving his note therefor secured by 200 shares of Shattuck Denn stock which was purchased with the borrowed money, and certain other stock which belonged to defendant, as collateral therefor.

In September, 1931, plaintiff's note was renewed, but additional security of 200 shares of Shattuck Denn stock was put up by plaintiff at the time, thus making 400 shares of Shattuck Denn, plus certain other stock not involved herein, as collateral for plaintiff's note. On October 30, 1931, plaintiff's note was cancelled, the collateral returned to him, and at the same time defendant borrowed $1100 from the Valley Bank, which was used to pay plaintiff's note, and the col-

lateral which had been delivered to plaintiff was returned to the bank as security for defendant's note. This left an indebtedness to the Valley Bank of $1100 evidenced by the note signed by defendant and secured as collateral by the 400 shares of Shattuck Denn stock which had thus been purchased, together with certain other collateral; and the indebtedness of $525 to the Old Dominion Bank, evidenced by the note of defendant for that amount. Thereafter, for about eight months plaintiff sent to defendant various sums of money to make payments on the two notes, and these payments were made by defendant, he at the same time contributing an equal amount for the same purpose.

In August, 1932, plaintiff had gotten into serious difficulties, financially and otherwise, and he met defendant and they discussed the transaction. Plaintiff stated that he was without a job and without money, and that it would be perfectly satisfactory with him if the stock was sold at that time, and if there was a deficiency he would eventually take care of it, to which, according to plaintiff, defendant replied,

"Forget about that. What is the carrying of five or six hundred dollars in my financial condition. Now, we will keep that stock and we will sell it, we hope, some time in the future at a profit".

Plaintiff and defendant met several times during the next four years and discussed the transaction, and defendant always stated that he still had the stock and would continue to carry it. In 1936 the price of the stock had advanced to a place where it showed a decided profit, and plaintiff suggested, by letter to defendant, that it should be sold and the profits divided, whereupon defendant, for the first time, stated that plaintiff had no further interest in the stock and that

he would give him none of the profits. Thereafter this suit was brought.

Defendant, on the contrary, in his testimony claimed that the interests of the parties were separate in the purchase of the stock, each buying 200 shares, and that there never was any joint adventure. He also testified that he had helped plaintiff finance the matter after October, 1931, by assuming all the obligation to both banks, and that, although plaintiff had contributed a small amount of payments during the next eight months, in August, 1932, he told defendant, in substance, that if the latter would assume the responsibility for the entire transaction and release plaintiff, he (defendant) might have all of plaintiff's interest in the stock, and that this was done.

Counsel for defendant has spent much time setting forth the law governing joint adventures. With these general principles of law we agree, but if the evidence offered on behalf of plaintiff is to be believed, every circumstance required to establish a joint adventure, as a matter of law, was shown by the evidence of plaintiff and corroborating evidence, both oral and documentary, by disinterested parties. As to whether this agreement was terminated in August, 1932, we have only the testimony of plaintiff and defendant; the one says it was not, the other says it was. The trial court believed plaintiff, and we cannot, as a matter of law, say that it was not justified by the evidence in so doing.

If there was a joint adventure to begin with, and if it was continued by the mutual agreement of parties until repudiated by defendant without the consent of plaintiff, then plaintiff is entitled to an accounting as of the time when the stock was sold by defendant. The court found, on competent evidence, that considering the price at which the stock was sold

and the amount which was due from plaintiff to defendant on the accounting, there was a balance due plaintiff of the amount set forth in the findings, and properly rendered judgment therefor.

The judgment appealed from is affirmed.

ROSS, C. J., and McALISTER, J., concur.